## Chicago & Alton R. R. Co. v. Emma Graham, Adm'x.

1. RAILROADS—*Liability for Injuries to Trespassers.*—Railroad companies are not liable for injuries sustained by trespassers, unless such injuries are the result of some wanton or willful act of their employes done in the line of their employment.

Action in Case, for personal injuries. Trial in the Circuit Court of Morgan County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1899. Reversed with a statement of facts. Opinion filed September 20, 1899.

M. J. SCRAFFORD and WILLIAM BROWN, JR., attorneys for appellant.

W. L. COLEY, attorney for appellee; JEFFERSON ORR, of counsel.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

This was an action by appellee against appellant in two counts, first, for negligently, willfully and wantonly causing the death of James Graham by ordering him off a moving freight train where he was trespassing, in compliance with which orders he fell and was thrown under the wheels, the brakes being set tightly, and was then run over and killed by a malicious act in releasing the brakes; and, second, for pushing him off the train under like circumstances, causing his death.

Two trials by jury were had, the first resulting in a mistrial, the second in a verdict against appellant for $250, upon which the judgment was entered by the Circuit Court, from which this appeal is taken. Several errors are assigned upon the record.

It developed upon the evidence that deceased, a boy in his fifteenth year, in company with two other boys had ridden on a freight train of appellant from Roodhouse, where they lived, to Jacksonville; and on April 15, 1895,

as a freight train was preparing to leave Jacksonville for Roodhouse, the conductor in charge of the train observed the three boys sitting near by, and, divining their purpose, told them not to get on his train. When the train moved out, however, they succeeded in secreting themselves in an empty car destined to be switched out of the train and left at Murrayville, between the points mentioned. Having descended from the train at Murrayville, the three boys stood about watching operations until just as it began to start for Roodhouse, when the three mounted, each a separate car, by climbing up the ladder at the side, hanging on by hands and feet. The deceased, James Graham, was seen by a brakeman, who was located on top of the train near the engine, and the brakeman advanced along the top of the cars toward Graham shouting and waving his hands and arms in a manner indicating a demand for the boy to get off the train, and the deceased was observed to look up and to make a move to comply with his exhortations and commands. Two witnesses at Murrayville saw this much from a point a short distance at the side of the tracks, until the high fence surrounding the cattle pen there shut off a view of the boy as he still clung to the ladder at the side of the car. They still could and did see the brakeman approaching the car where the boy was, and at no time was he seen to strike at or touch the deceased. The floor of the cattle chute extended out at the level of the floor of the cars, from the cattle pen to a point within eighteen inches of the side of the cars; and as the boy came near this chute a witness, who had been looking down the track watching what occurred as detailed above, turned away and saw no more until the train passed the chute, though at this point he saw that the brakeman was about to step on the car occupied by deceased. There is no evidence tending to show that the brakeman released the brakes on the train after the boy fell; and it is clearly proved that the speed of the train was very slow, not faster than the rapid walk of a man. The appellant contends, and one of the companions of the deceased so testified, that Graham was caught and thrown

by this cattle chute, which position is argued by appellee to be impossible. But without the testimony of this companion, whose credibility is assailed by appellee, there is evidence from which a reasonable inference of a similar nature might be drawn. At the time of the accident the brakeman was seen to be about to step on the car where the boy was; the boy, it seems, was watching the brakeman; he was well up on the ladder toward the top of the car, and had his coat over his arm. The approach of the brakeman and the slow motion of the train may have induced him to decide on getting off the car, and in his descent his coat, or some part of his person, probably caught on the chute, jerking him down and under the wheels. Be this as it may, he was found dead at the tracks near the cattle chute, immediately after having been run over by the train. The brakeman did not testify. On special interrogatories the jury found that James Graham, at the time he was killed, was riding on the freight train without payment of fare; that he was not struck and knocked off by the chute, nor by the brakeman, and that it was not the purpose of the brakeman to warn him of any danger. At the close of plaintiff's evidence and again of all the evidence, appellant offered a peremptory instruction in its favor, which the court refused, and the question of error in that action is presented here.

It will be observed that no evidence tends to support the second count of the declaration, where the brakeman is charged to have struck and knocked deceased off the train. Further, it is to be noted that the first count charges intimidation of deceased by language and gestures of the brakeman, whereby he was compelled to drop off the car; that he did so in consequence of being intimidated, and fell under the wheels, where brakes were set tightly, and was killed by the willful and malicious act of the brakeman in releasing these brakes. For this there is no evidence tending to support the allegation that the brakeman released any brakes at the time, nor that any brakes of this train were set.

Thus it is a question whether appellant is liable for the

death of this boy, who either jumped off its train, being a trespasser, after he was told to do so by the brakeman, or was caught and jerked off by the cattle chute in making an attempt to get off, with the same incentive.

That he was a boy of experience in the mode of travel he indulged seems well established by the evidence; and it forms a part of his experience that he must have known the dangers and risks entailed by jumping on and off moving trains. If there was danger or risk in jumping off this train he must have known; and if he jumped off the train at the suggestion of the brakeman, he took upon himself the risk of that action; for it can not be held as the law, under the circumstances of this case, that the mere use of words by the brakeman was such a coercion as compelled the deceased to undertake any risk in what he did. He must, therefore, be held to have acted voluntarily. Under the evidence of this case, and the view here taken of it, the peremptory instruction to find for appellant should have been given; and for this error the judgment of Circuit will be reversed. Judgment reversed.

**Finding of Fact** to be recited in the final judgment:

We find, as a matter of fact, that James Graham, plaintiff's intestate, was a trespasser stealing a ride upon the freight train of defendant, without any right to do so; that he voluntarily jumped or fell from said train while it was in motion and was instantly killed by the wheels, without fault or neglect of the appellant; and we find that the appellant is not guilty of negligence, as charged in the declaration.